We'll hear the next case, Scott v. Chipotle. May it please the Court, my name is Rachel Bien, and I represent the plaintiffs' appellants. Turning first to the denial of class certification, the district court erred by failing to weigh the common evidence against the individualized issues, which the predominance analysis requires. As I will discuss, the common evidence was substantial and outweighed the purported differences among class members in the performance of certain As this court held in Myers v. Hertz Corp., the main concern of the predominance inquiry is the balance between the individual and common issues. That balancing did not occur here. In particular, the district court did not consider several categories of common evidence that plaintiffs presented. First, the district court failed to weigh the consistent thread in nearly all of the testimony that apprentices spend a substantial amount of their day preparing food and serving customers. You've said several times that the district court failed to consider the evidence. I mean, there was a very full factual record here. The district court does go through quite a bit of the evidence. Isn't this inherently a factual inquiry and subject to clearly erroneous review, at least as to the findings of fact? We argue that the court should take a de novo review first in looking at whether or not the court used the correct legal standard for predominance. And we argue that predominance requires there to be a balancing analysis, and there was no balancing analysis here. The failure to consider several categories of common evidence that we presented was an abuse of discretion. And so there can be a legal error that results in an abuse of discretion. Either way, the district court's determination with respect to predominance, and as I will discuss, superiority, should be vacated and remanded for the court to consider. If the court finds that the plaintiff's testimony was internally inconsistent and do we second guess that? The citations to record evidence were misleading or incorrect. Do we second guess those kinds of findings? Certainly with factual findings, there's a high standard for us to overcome them, but we think we've done that here. The findings with respect to the named plaintiffs that they were internally inconsistent. In fact, if you look at the testimony that the district court recited, what it shows is very typical in a misclassification case, a mix of exempt work and non-exempt work. There isn't anything inconsistent that named plaintiffs said that they spent a tremendous amount of time performing the hands-on food preparation and customer service work, while at the same time performing some management duties in terms of hiring and scheduling. That's what we find in most misclassification cases. What precisely was the legal error that you think Judge Carter made in his predominance analysis? Well, what we believe the error was, was that it didn't engage in the balancing. I would sort of break it down into two pieces. So the district court identified certain individualized issues. But predominance can be met even if there are individualized issues. The question is, are those individualized issues of the magnitude such that they will predominate over the common ones? And there wasn't that analysis here. The court didn't consider the common categories of evidence against those individualized issues. And I'd like to just spend a little bit of time talking about the common categories of evidence because they were really substantial here. As I was mentioning, we had this evidence consistently in the testimony about what apprentices spend a substantial amount of their time on, serving customers and preparing food. And in fact, Chipotle reclassified its apprentices in California, largely because they feared that if they didn't, then they wouldn't be able to perform this kinds of hands-on work. They said, quote, we would have to eliminate shoulder-to-shoulder training and limit direct daily contact with our customers, things that are fundamental to our success. So work that apprentices spend a substantial amount of time on, and that is especially important to Chipotle, is highly relevant to what the primary duty of the job is. Also, whether this hands-on work is exempt or non-exempt under the regulations concurrent duties test is a key merits question in this case. So resolution of that issue alone would have significantly moved the ball forward. Second, while as I have mentioned, we disagree with the district court's factual findings that class members' managerial tasks varied widely. And believe we've demonstrated that the testimony on the whole shows that they performed a similar set of duties to a similar extent. Either way, the district court abused its discretion by failing to weigh these inconsistencies against the commonalities. Including that all apprentices' management functions are defined and cabined by company-wide policies that impact how they perform their management duties. Including Chipotle's scheduling tools, which largely automate the scheduling process. Chipotle's prep deployment tool, which dictates precisely how food is prepared and customers are served. Chipotle's hiring policies. Can we turn to the collective action? Yes. Because I do have some questions there. Thank you. The legal argument is that the district court applied the wrong standard because it applied, that it applied the sliding scale standard and conflated rule 23 with the collective action. Does the analysis show that? Because the district court does say, I don't want to conflate it. But so, where in the analysis does it show that it conflated? Right, well, the way that it conflated it is that it relies almost exclusively on its predominance analysis to conclude that collective members are not similarly situated. And so, in doing so, it applies a heightened standard to the similarly situated analysis, which the weight of authority is that it is much lower than rule 23, and in particular, doesn't incorporate a predominance analysis. So I think that's where- How do you think you can, you determine whether or not employees are similarly situated? What's the test? Well, this court has not determined what similarly situated means in the decertification context. We submitted supplemental authority of the Ninth Circuit's recent Campbell versus City of Los Angeles decision, which is really the first decision to get into what does it mean to be similarly situated. And ultimately, the court concluded that, although rule 23- Rather than the provenance, what rule of decision are you urging on us? To adopt a standard that is consistent with the language that Congress used. Of course, but what is the standard? Sure, I mean, we support the standard that Campbell adopted, which is this. Party plaintiffs are similarly situated and may proceed in a collective to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims. So as you can see from the language there, to some extent, it does reflect the commonality analysis under rule 23, with the caveat in Campbell that we're not necessarily importing some of the evidentiary standards under rule 23, such as that the plaintiffs must make that showing by the preponderance of the evidence or that necessarily means the kind of rigorous analysis. The district court applied, I guess what's referred to as the ad hoc rule, the three factors. Was that error? Is it your position that that was error? Our position is that the court applied the factors incorrectly. Of course, this court has not adopted the ad hoc test. It doesn't have to, it can fashion its own test. But if it did adopt the ad hoc test, we believe the district court incorrectly applied it, because what it did was turn the analysis on its head. It did not consider the similarities between collective members, which is inherent in whether they're similarly situated. Instead, it only considered the differences between class members. Well, but the conclusion was a comparison of the named plaintiffs with the opt-ins, as noted above, shows that apprentices had vastly different levels and amounts of authority in exercising managerial tasks. That's not borrowing the standard from rule 23, that's just basically referring to his findings that were part of his rule 23 analysis, right? Well, our position is that in only looking at the individualized issues and not looking at all on the common evidence, there's a similar flaw here with respect to our argument on predominance and our argument on the similarly situated analysis. The court didn't consider any of the common categories of evidence in order to put any of these dissimilarities in context, or to determine what weight they should get versus all of the common evidence. So- If you find that they're vastly different, that they are vastly different across the collective, do you need to do all that other stuff? Well, the court found that they were vastly, just acknowledging with the finding, the court found they were vastly different with respect to certain discrete management functions. It didn't consider what the evidence shows they spend a substantial amount of their time doing, which- He gives an illustration, right? I mean, he basically refers to his rule 23 findings of fact, and then he gives an illustration with Kelch, who worked in both Oregon and Kentucky, right? Right, she is the one example he gives of why she had two different experiences in two different restaurants. That's illustrative. You're saying he needed to do more than that? He needed to go through, in his opinion, all 37 or however, no it's 37 states, it's 516 opt-ins. He needed to do it 516 times? No, he didn't need to do it 516 times, but we presented a tremendous amount of common evidence uniting all of these collective members. Not just a uniform job description and a uniform classification and repeated admissions by Chipotle that all of these collective members have the same core duties. Can they be similarly situated even if there are vast differences? I think that probably they, it depends on what those differences are. So for instance, are those differences material to the exemption question? If they are material to the exemption question, well then I think you still need to consider whether there are substantial commonalities notwithstanding those differences. I mean, look, Kelsh's case, right, I think it was Oregon, 85 to 90% of her time was working on the line with the crew chopping vegetables and things. And then in Kentucky, it was only 30% of the time, and the rest was managerial stuff. That's, that would sort of end the inquiry right there, right? Well, it might end the inquiry with respect to her, but that is inconsistent with what the preponderance of the evidence showed here. That's really your argument, is that Judge Carter mischaracterized the evidence that it's actually different than what he said. Isn't that really what you're saying? I think that there are two things. I mean, one is that he just didn't analyze or consider the bulk of the evidence that showed that apprentices were largely consistent, not just in terms of what they spent most of their time on, but also in terms of these particular management duties. We also disagree with his characterization of the evidence and his specific factual findings, because we don't think that they're supported by the record. And they omit much of the testimony from the same class member that paints a fuller picture. You've saved some time for the bottle. We'll hear from the other side. Thank you. Good morning, your honors. Richard Simmons, Shepard Mullen. May it please the court. To begin with, I would enjoy the opportunity to respond to Judge Chinn's question, which was, can they be similarly situated even if there are vast differences? The answer to that is clearly, no, they cannot. And Judge Carter stated repeatedly throughout his decision that the disparate accounts- And the answer's clear. I mean, can't they be similarly situated in the overall sense? They're all apprentices, or there's one job description. There are many common issues. And yet, there can be differences among, vast differences in the particular circumstances. And yet, they would still fit within the purpose of the statute, no? I don't believe so. And if I may answer that in context, and I will begin with the 216B analysis of similarly situated. Consistent with what I think the court's attention is focused on at the moment. The district court evaluated evidence at great length that was before it, and determined that disparities in the primary duties actually performed, the standard adopted in Myers, made apprentices have differences in their duties that were so great that it could not allow any representative proceeding to go forward. The only question for this court to determine is whether the district court applied the correct law to hold that the plaintiffs failed to meet their burden under- Rule 23. I do. I do. I think that's clear. And on page 17, the district court employs this concept of a sliding scale. And does seem to say that the bigger the class is, the more the analysis will mirror the rule 23 analysis.  Well, first of all, the court prefaced its comment at page 16 with the statement that you alluded to earlier. And that is, the court avoided conflation. One place it says one thing, and another place it says something that perhaps is different, and that's- I don't- Which standard did he employ? Well, he did not apply a sliding scale standard. I will say, by the way, that the quote of Indigret, which is what the plaintiffs hinged their entire argument on, is simply a quote. The court first identified the three-pronged analysis that has been followed by district courts in this circuit for many, many years. The so-called ad hoc test. It first quoted the three prongs of the analysis. It then put a heading under disparate employment settings in the text of the decision. And under that, it began with a cite to Indigret, which had the sliding scale reference. Interestingly, part of that very same quote appears in Ruiz. Step back and look at the big picture. I'm putting aside class action, but the collective action, 516 employees have opted in. They've said, we want to be in on this. It would be difficult for them to bring individual cases. It wouldn't be cost effective, etc. And there certainly are many common elements. There are many disparate elements. But isn't this the kind of case that would seem to fit within the concept of a collective action? I don't believe so, Your Honor. I think it's absolutely clear that if you look at the first prong- Would Chipotle rather engage in 516 separate trials all around the country? Well, I don't believe that's the issue before the court, nor is that the issue that the district court addressed. Well, it's a consideration, isn't it, in terms of even the third factor, fairness and procedural consideration. So it is something that we think about. Well, if I could, Your Honor, I'd like to address the first factor to begin with. Because the court first identified the disparate employment settings. And in that regard, it had talked, beginning at page 14 of the opinion, of the order, about the vast differences that existed in different employment settings. And after it talked about the differences in management structures, some restaurants had GMs, some did not. Some had restaurateurs, others did not. Some were run just by apprentices, such as the Kentucky restaurant that was run as Ms. Kelch wished it to be run. Those were factors analyzed under the disparate employment settings analysis. And if the court finds that there are vast differences in the employment settings caused by differences in management structures, in sales volume, in managerial styles of the various apprentices, and that impacted directly the way in which apprentices performed their duties. These big class actions are rarely tried. I mean, every once in a while, one will go to trial. But you don't need to have perfect similarity, right? You try the common issues, and then you have the individual members of the collective action. Can then, whether it's in front of a special master or subsequent mini trials. I mean, there are mechanisms where it seems to me, why wouldn't that be more efficient? You deal with the common issues first, and then you have the individual follow up. And there may be the person from Kentucky who doesn't belong, or the person from New York who does. But you look at those things after you deal with, in a more efficient manner, with the common issues. Well, Your Honor, I think the court devoted literally five to six pages of its analysis to addressing the different factual situations and allegations regarding primary duties that more than 40 apprentices testify to either in declarations or in deposition testimony or in both. It talked about those disparities, that's critical, and those are factual findings of the court, which as you noted at the outset, are entitled to considerable deference and should not be overturned by this court. Given the dissimilarities and the disparities that have been testified to, it is not just Ms. Kelch's testimony that is important, although it is important. Because as was pointed out, she said that in Oregon, she had a general manager who oversaw her and limited her leadership abilities. Whereas in Kentucky, there was no general manager, a difference in the employment setting, and she was free to manage the restaurant as she wished. But the court did not leave it at that. The court had already said on three pages of its order that the plaintiffs had testified inconsistently, so as to make them disparate and not similarly situated. That's the finding of the court with opt-ins. It also addressed the- The class consisted of six separate states, right? The proposed class, yes. Right. I didn't see any analysis in the district court's opinion that took into account these six potentially different classes. The analysis seemed to proceed as though there was simply one knowledge class, and I'm not sure how we square that approach with Langen. Well, it's interesting, Your Honor, because the court did point out that the plaintiffs had failed to offer the district court any analysis of the differing rules and exemption criteria in each of the six states. So they failed initially to address or meet their burden. They simply said that the standards and criteria in the six states would be, quote, identical, close quote. The district court then hastened to point out that he disagreed, and they were not identical. He then provided illustrations of the material differences that existed under the laws of some of those states, including criteria having to do with the percentage of time that can be spent on non-exempt duties, and people still qualify as exempt. And for that reason, the obvious reason that the court pointed out, the Rule 23 appeal could easily be disposable because the plaintiffs failed to establish the appropriateness of class certification for each of the six states. That was a result of their failing. But the court then pointed out that it would have to be addressed with individualized proof and a series of mini trials in the context of that analysis, and it went from the discussion of the failure of the plaintiffs to establish predominance to their failure to establish superiority. So the court did address that, and the problem was created by the plaintiffs. There's some tension with Judge Carter's commonality finding under the Rule 23 analysis, and then his predominance findings, and then his, which the predominance findings then sort of carry over into the FLSA collective analysis. I mean, you don't seem to be defending his commonality conclusions, right? I think this is the very same issue that this court wrestled with in Myers, where it talked about the difference between commonality under Rule 23A and predominance under Rule 23B3, and the court pointed out in Myers, and Judge Carter pointed out here, there's a difference between mere commonality, where common issues exist, and the issue of predominance, where the real question is whether or not common issues predominate. And here, Judge Carter did specifically address that, and he stated, among other things, that the disparate accounts of the way in which apprentices perform their duties and the authority that each had was fatal to the predominance analysis. So you are then, you're not taking issue with his commonality findings? No. I believe there is, commonality does not equate to predominance, and the judge pointed that out. And so taking the commonality, you don't take issue with it? And put it in the context of the collective action, does the commonality not support the argument that they're similarly situated? I do not believe so, Your Honor. I think if the court applies the three-pronged analysis, which both sides advocated to Judge Carter, there's no dispute about that. That was the standard that both sides said the judge should apply. And in response to that, he did apply it. It was the standard used in district courts in this circuit, even though the Second Circuit has not previously articulated a different standard. But it has been applied in cases that have been affirmed by this court. Would it make a difference if we applied the Ninth Circuit standard to this case? Well, I think not. And if we take a look at the Campbell versus City of Los Angeles decision, one thing that is really important to note is that the Ninth Circuit concluded that the district court had applied the wrong standard, yet nevertheless affirmed the decision because the right result was achieved, and that would be true here, too. I do not believe that the Ninth Circuit standard, which rejected the minority rule and the majority rule, and devised its own rule, is a correct rule. And I am from California, by the way. Nonetheless, I think the Ninth Circuit got it wrong. But what it did get right was the fact that even if you find the district court applied the wrong standard, you nevertheless affirm the decision because it is the correct result. Thank you. Thank you. Thank you very much. Have a good trip back to California. We'll hear the rebuttal. I'm in California, too. Your Honors, if you agree that Rule 23 is not the correct standard for simile situated, that simile situated applies a lower standard than Rule 23, then the district court's finding that the plaintiff's here met commonality should decide the simile situated analysis, certainly if this court adopts the test that's set forth in Campbell, because it essentially mirrors the commonality finding. And in fact, Campbell said, we even think it should be somewhat lower than commonality. So a few brief points. There's really no place for a sliding scale analysis under 216B. 216B says in a very straightforward way, you can proceed as a collective so long as you meet the simile situated requirement. There's no issue about how many people you are. What really matters is whether or not you've established a common policy that applied to this group of people regardless of how many there are. In this case, we had a relatively small collective in comparison to many collectives that have been certified. Just turning to some of the differences that the district court thought would make a difference here in terms of determining the primary duty of the job. Things like sales volume, the management style of the general manager. Whether or not there was a general manager or restaurateur or whether the apprentice was the on duty manager. Those are the types of factors that courts have repeatedly rejected in these kinds of cases. Recognizing that in no restaurant or location are all class members going to be identical to each other. In any employment case, the lived human experiences of these class members are going to distinguish them. And we certainly don't claim here that all apprentices are alike. But there were- At the end of the day, there's an abuse of discretion standard for both of these cases, right? We would argue that the court should apply a de novo standard in terms of whether or not, as a threshold matter, the court adopted the correct standard for predominance, superiority, and the 216B analysis. It can be, and if the court misapplied the standards, then it can be an abuse of discretion itself. A legal error constitutes an abuse of discretion. Okay, and on the predominance, what do you think the legal error was? The legal error was not engaging in the balancing analysis. That is what predominance requires. And there was no balancing of these individualized questions to determine if they were of the magnitude to make those questions predominate. Going back to the primary duty analysis, we're supposed to be focused on- The judge kind of did that. He went through these cases and said, here are the problems I see, and consequently, I mean, went through the individual circumstances, and here are the problems I see. And I don't think the common questions predominate. But he didn't consider any of the common evidence in the face of those dissimilarities with respect to certain management functions. So he didn't consider, okay, if people do have these dissimilarities in whether they've scheduled employees many times or just a handful of times, is that really going to make a difference ultimately in the predominance analysis? We're not looking for everyone to be identical, but whether they perform the same baseline responsibilities, which they can, even if some people scheduled somewhat more than other people. Did you urge on Judge Carter the necessity of going of considering each state class? We did. We presented our case at, we asked the court to certify state law classes for each state law. We had a class representative for each state law. The state laws at issue here largely overlap. The difference is that two of the six state laws have a quantitative analysis for what the primary duty is, and the others look to the most important main principle of the job. They track the FLSA. So we didn't think that distinction would make a whole lot of difference because we're going to look at the same evidence regardless of whether you use a quantitative test or not. And in fact, the FLSA and the state laws that aren't quantitative still consider the amount of time spent on exempt work. It's just not a dispositive issue. Thank you, your honors. Thank you. We'll reserve decision.